UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **NO. 21-cv-2172-PHX-SRB** |
| Plaintiff, | ) | **CONSENT DECREE** |
| | ) | |
| v. | ) | |
| | ) | |
| Barnet Dulaney Perkins Eye Center, PC, an Arizona professional corporation, and Medical Management Resources Group, L.L.C., d/b/a American Vision Partners Holdings, L.L.C., an Arizona limited liability company. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## I.     **INTRODUCTION**

1.     This matter is before the Court for entry of a Consent Decree to resolve the above-captioned civil action.  The United States filed this action against Barnet Dulaney Perkins Eye Center, PC (BDP), a medical provider with 24 facilities specializing in optometry and ophthalmology care and Defendant Medical Management Resources Group, L.L.C. d/b/a American Vision Partners (AVP), an eye care practice management organization and Management Service Organization (MSO) providing management infrastructure, and technology to BDP and other medical providers, to enforce Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181–12189, and its implementing regulation, 28 C.F.R. Part 36.

2.     The United States received complaints alleging that Defendants discriminate against individuals with disabilities who, because of disability, need assistance transferring to and from wheelchairs for surgery.  The complaints alleged that Defendants deny such individuals medical services or require them to pay for private medical transport to not only assist with transferring them to and from surgical tables but also to transport them to and from facilities on gurneys or stretchers.

## II.     PARTIES

3.     Plaintiff is the United States of America.

4.     Defendant BDP is an Arizona professional corporation with its principal place of business at 63 South Rockford Drive, Suite 220, Tempe, Arizona 85281.  BDP operates 24 medical facilities in Arizona, specializing in optometry and ophthalmology.  Defendant BDP is a public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

5.     Defendant AVP is an Arizona limited liability corporation with its principal place of business at 2121 E. Rio Salado Parkway, Ste 220, Tempe, Arizona 85281.  It is an eye care practice management organization and MSO providing management, infrastructure, and technology to BDP and other medical providers.[1]  Defendant AVP's partner practices are public accommodations within the meaning of 42 U.S.C. §§ 12181(7)(F).  Plaintiff alleges that AVP is a public accommodation within the meaning of 42 U.S.C. §§ 12181(7)(F).

## III.     LEGAL STANDARDS

6.     Title III of the ADA prohibits discrimination against individuals on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages

---

[1] Where indicated, this Decree and its provisions also apply to AVP's management, control, or involvement in its partner practices acquired on or before December 20, 2021 (the "partner practices"), including Southwestern Eye Center, M & M Eye Institute, Retinol Consultants of Arizona, Abrams Eye Institute, Southwest Eye Institute, Aiello Eye Institute, and Moretsky Cassidy Vision Correction.  This Consent Decree resolves all alleged violations by Defendants and these partner practices at any of their facilities through the date the Consent Decree is entered.

and accommodations of places of public accommodation.  42 U.S.C. §12182(a); 28 C.F.R. § 36.201(a).

7.     It is a violation of Title III to deny an individual or class of individuals, on the basis of disability, the opportunity to participate in or benefit from a good, service, facility, privilege, or accommodation, in violation of 42 U.S.C. § 12182(b)(1)(A)(i) and 28 C.F.R. § 36.202(a).

8.     It is a violation of Title III to afford an individual or class of individuals, on the basis of a disability, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals, or to provide an individual or class of individuals, on the basis of disability, with a good or service that is different from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, or other opportunity that is as effective as that provided to others.  42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b) and (c).

9.     Title III further provides that a "public accommodation may not impose a surcharge on [persons with disabilities] to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are required to provide [those individuals] with the nondiscriminatory treatment required by the Act or this part."  28 C.F.R. § 36.301(c).

## IV.     THE UNITED STATES' ALLEGATIONS

The United States alleges the following:

10.     Defendants discriminate against individuals with disabilities, in violation of 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. Part 36, through Defendants' policies and practices of requiring individuals with disabilities who need assistance transferring to and from wheelchairs for surgery to retain third-party medical support personnel to assist with transfer to and from surgical tables and transportation to and from Defendants' facilities.

11.     In violation of the ADA, Defendants have discriminated, on the basis of disability, against individuals in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations.  42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

12.     In violation of the ADA, Defendants have denied an individual or class of individuals, on the basis of disability, the opportunity to participate in or benefit from a good, service, facility, privilege, or accommodation, in violation of 42 U.S.C. § 12182(b)(1)(A)(i) and 28 C.F.R. § 36.202(a).

13.     In violation of the ADA, Defendants have afforded individuals with disabilities with the opportunity to participate in or benefit from a good, service, facility, privilege, or accommodation that was not equal to that afforded to other individuals.  42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

14.     In violation of the ADA, Defendants have imposed a surcharge on aggrieved individuals with disabilities to cover the costs of measures that were required to provide them the nondiscriminatory treatment required by Title III.  42 U.S.C. § 12182 (b)(2)(A)(i); 28 C.F.R. § 36.301(c).

15.     Defendants' violations of the ADA amount to a pattern or practice of discrimination, and  Defendants' discrimination against a person or group of persons raises an issue of general public importance.  42 U.S.C. § 12188(b)(1)(B).

16.     By entering into this Consent Decree, Defendants do not admit any allegation made by the United States; nor do Defendants admit liability, wrongdoing, or violation of the ADA.  The United States and Defendants agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged litigation between the parties, and that this Consent Decree is fair, reasonable, and in the public interest.

Accordingly, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

## V.    JURISDICTION AND VENUE

17.    This Court has jurisdiction over this action under 42 U.S.C. § 12188(b)(1)(B) and 28 U.S.C. §§ 1331 and 1345.  The parties agree that venue is appropriate pursuant to 28 U.S.C. § 1391.

## VI.    ACTIONS DEFENDANTS WILL TAKE

18.    <u>General Nondiscrimination Obligation</u>.  Defendants, their partner practices, and all of their officers, agents, employees, and all other persons in concert with them, will not discriminate against individuals on the basis of disability in the full and equal enjoyment of their goods, services, facilities, privileges, advantages, or accommodations.  42 U.S.C. §12182(a); 28 C.F.R. § 36.201(a).

19.    <u>Specific Obligations</u>.  Defendants and their partner practices will:

   a.    Not deny an individual or class of individuals, on the basis of disability, with the opportunity to participate in or benefit from a good, service, facility, privilege, or accommodation, in violation of 42 U.S.C. § 12182(b)(1)(A)(i) and 28 C.F.R. § 36.202(a).

   b.    Not deny individuals who, because of disabilities limiting mobility, need assistance transferring to and from wheelchairs for surgery the opportunity to participate in or benefit from a good, service, facility, privilege, or accommodation that is equal to that afforded to other individuals.  This means that Defendants and their partner practices will engage in an interactive process with the patient, which includes giving due consideration to the patient's preference, and conduct an individualized assessment of the patient's needs in determining what transfer assistance options can be provided to the patient.  Defendants and their partner practices will prioritize transfer assistance that maximizes the independence of the patient, including, for example, use of accessible medical equipment and trained staff.  Defendants and their partner practices will not require patients with disabilities to be transported  by third-party medical transport or transfer personnel in order to utilize Defendants' medical services.  42 U.S.C. § 12182(b)(1)(A)(ii);

28 C.F.R. § 36.202(b).  When a patient prefers to receive transfer assistance from third-party medical transport, Defendants and their partner practices will pay for the provision of such assistance, provided that Defendants and their partner practices also offer the patient at least one alternative to third-party medical transport.  In situations where the only accommodation offered by Defendants and their partner practices is third-party medical transport, Defendants will report the circumstances surrounding the decision, including why  no other accommodation could be provided, to the United States pursuant to the timeline set forth in Paragraphs 23 and 42.

c.  Provide transfer assistance to patients with disabilities at Defendants' and their partner practices' facilities.  42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).  In situations where transfer assistance is requested but not provided, Defendants will report such circumstances, and the reasons for not providing transfer assistance, to the United States pursuant to the timeline set forth in Paragraphs 23 and 42.

d.  Not impose a surcharge on individuals, who, because of disability limiting mobility, need assistance transferring to and from wheelchairs for surgery.  42 U.S.C. § 12182 (b)(2)(A)(i);28 C.F.R. § 36.301(c).   In situations where a surcharge is imposed by Defendants, Defendants will report such circumstances, and the reasons for imposing the surcharge, to the United States pursuant to the timeline set forth in Paragraphs 23 and 42.

20.    Effective immediately, when scheduling surgical appointments and during surgical consultative appointments, Defendants and their partner practices will ask the patient or prospective patient whether transfer assistance is needed.  When the patient indicates that transfer assistance is needed, Defendants and their partner practices will engage in an interactive process with the patient, which includes giving due consideration to the patient's preference, and conduct an individualized assessment of the patient's needs in determining what transfer assistance options can be provided to the patient.  Within 21 days of entry of this Decree,

Defendants will provide to the United States for its review and approval, not to be unreasonably withheld, a transfer assistance policy for Defendants and their partner practices, that complies with the ADA and this Decree, and incorporates safe patient handling protocols.  The policy will be implemented no later than five (5) days after the United States' approval.  The policy will include a process for: an individualized assessment of the requested transfer assistance; consideration of any transfer assistance requested; acquiring equipment to provide transfer assistance; training personnel to provide transfer assistance; and a procedure for the resolution of any disputes related to transfer assistance.  The policy will also require that Defendants and their partner practices disclose the accessible medical equipment that is available at each surgical center and, where accessible medical equipment is not currently available, how they propose to obtain such equipment within five (5) days and whether equipment vendors will provide training on how to use equipment that is provided on rental or temporary basis.  The policy will also require Defendants and their partner practices to confirm the proposed type of transfer assistance at least five (5) days prior to the patient's scheduled appointment or procedure.  If Defendants or their partner practices refuse to accommodate a patient because they require transfer assistance, then Defendants and their partner practices will explain the reason for their decision and send the explanation and any documentation in support to the United States pursuant to Paragraphs 23 and 42.

21.    Within twenty-one (21) days of entry of this Decree, Defendants will provide to the United States for its review and approval, not to be unreasonably withheld, a Non-Discrimination Policy applicable to Defendants and their partner practices, that they will post and maintain on their websites' homepages and in their employee handbooks and patient materials.  The policy will be implemented no later than five (5) days after the United States' approval.  Defendants will confirm fulfillment of the above requirements to the United States pursuant to the timeline set forth in Paragraphs 23 and 42.  Defendants' Non-Discrimination Policy shall include the following statements:

      a.    [Name of entity or facility] does not discriminate in the provision of services to patients or prospective patients with disabilities.

b. [Name of entity or facility] will engage in an interactive process with patients who, because of disability, need transfer assistance at its facility, to determine what transfer assistance options can be provided to each patient. This process will ensure that patients with disabilities are treated with respect, dignity and independence and will acknowledge the proficiency such patients have in understanding their disability and their transfer needs.

22.    Within sixty (60) days from the date upon which Defendants adopt the policies and procedures set forth in Paragraphs 20 and 21, Defendants and their partner practices will provide training on the nondiscrimination requirements of Title III of the ADA as they apply to Defendants' facilities, including training on interacting with individuals with disabilities, and techniques for safely assisting individuals with disabilities limiting mobility to transfer to and from medical equipment, examination tables and surgical tables. The training for Defendants' surgical centers will be live. The training for partner practice surgical centers may be virtual or pre-recorded, but each training session will provide an opportunity for live questions with a trainer. The trainers shall be approved by the United States, not to be unreasonably withheld, at least thirty (30) days in advance of the live training. The training will be provided to any employees who have contact with patients or prospective patients who may require transfer assistance, including those employees who are authorized to provide or schedule transfer assistance to patients or prospective patients with disabilities. Among other things:

a. The training may be tailored to the duties performed by specific employees or classes of employees;

b. Defendants and their partner practices will incorporate this curriculum into their routine new employee orientation within thirty (30) days of their start dates for future employees who are authorized to provide or schedule transfer assistance to patients or prospective patients with disabilities;

c. Defendants and their partner practices will maintain, for the duration of this Decree, attendance records for each training session conducted and will maintain a list of all employees, including job titles, who receive this training.

d.  For the duration of this Decree, Defendants and their partner practices will provide annual refresher training which may be live or virtual on the general nondiscrimination requirements of Title III of the ADA to all employees who have contact with patients or prospective patients who may require transfer assistance, including those employees who are authorized to provide or schedule transfer assistance to patients or prospective patients with disabilities.

Defendants will confirm fulfillment of the above requirements to the United States pursuant to the timeline set forth in Paragraphs 23 and 42.

23.    Three (3) months following the entry of this Decree, and every six (6) months thereafter, for the duration of this Decree, Defendants will provide the United States written monitoring reports that include activities described in Paragraphs 19-22.  Reporting instructions are set forth in Paragraph 42.

## VII.    CLAIMS FUND

24.    Establishment of Claims Fund.  Within 14 days of the entry of the entry of this Decree, Defendants will deposit the sum of $725,000 in an interest-bearing account ("Fund"). An Independent Fund Administrator ("Administrator") (see Paragraph 25) will have access to the Fund to compensate individuals with disabilities who claim in good faith they were harmed by Defendants' noncompliance with the ADA as alleged herein, and in the amended complaint, (i.e., who between 2017 and the entry of this Decree were asked by Defendants and their partner practices to use or were required to have third-party medical personnel transfer or transport them, and who would not have otherwise chosen to be transported by third-party medical personnel but for Defendants' and their partner practices' requirement) and who are identified through the procedures set forth in this Decree (Eligible Persons) (see Paragraph 26).  Within 30 days of the entry of this Decree, Defendants will submit proof to the United States that the account has been established and the required sum deposited.  Defendants will bear all costs of establishing the account, maintaining it, and issuing payments from it.  The sum deposited in the Fund, and all interest accrued, will be used for compensation of Eligible Persons.  Within seven

1  (7) days, after a written request, the Administrator will provide copies of account statements to
2  the United States.

3      25.  <u>Retention of Administrator</u>.  Within twenty-eight (28) days of the entry of this
4  Decree, Defendants will provide the United States with the resume and other relevant
5  information of the person or entity that Defendants intend to use as the Administrator to conduct
6  the Fund activities in this Decree.  Within 14 days of the United States' approval of the
7  Administrator, Defendants will retain the Administrator, subject to pre-approval by the United
8  States, which shall not be unreasonably withheld.  The Administrator must be an independent,
9  third-party, not affiliated with Defendants.  Defendants will bear all costs associated with
10  contracting and paying for the Administrator, and  Defendants' contract with the Administrator
11  will require the Administrator to comply with the provisions of this Decree that apply to the
12  Administrator.  The Administrator's contract will require the Administrator to work
13  cooperatively with the United States, including reporting weekly on work and providing all
14  reasonably requested information to the United States relating to this Decree.  The
15  Administrator's contract will require the Administrator to establish a cost-free way for potential
16  Eligible Persons to contact the Administrator and submit their claims, including by a Fund-
17  specific website, application (app), email, U.S. mail, facsimile, and a toll-free telephone number
18  (with a video relay or other accessible option to ensure access to deaf or hard of hearing
19  individuals), consistent with the website and language-accessibility requirements of the Notice
20  requirements set forth in Paragraph 29.

21      26.  <u>Eligible Persons</u>.  Monetary relief will be provided to Eligible Persons, defined as
22  persons or estates of persons who contacted the Administrator within the Claims period set forth
23  in Paragraph 32 and who, between January 1, 2017 and the entry date of this Decree:

24      (a) because of disability, needed assistance transferring to and from surgical tables for
25      surgery and were denied medical services because they needed assistance transferring; or
26      (b) used third-party medical support personnel to assist with transfer to and from surgical
27      tables and/or transport to and from Defendants' surgical centers and would not have

28

otherwise chosen to be transported by third-party medical support personnel but for Defendants' requirement.

27.    <u>Claims Procedure</u>.  Within twenty-one (21) days of the Administrator's retention, the Administrator will submit the following to the United States for review and approval, which shall not be unreasonably withheld.  The Administrator will accept and incorporate reasonable comments or revisions provided by the United States.

    a.    A claims form to be distributed to potential Eligible Persons and available for online submission.

    b.    A claims procedure to implement the fund, including processes and procedures by which the Administrator will determine and distribute monetary relief to Eligible Persons (subject to the Claims Review process defined and established in Paragraph 33), within 30 days of the claim submission deadline.

        i.    Such procedures shall require each claimant, including claimants filing on behalf of a decedent's estate, to declare under penalty of perjury that, as a condition of Defendants' and their partner practices' provision of healthcare services, between January 1, 2017 and the entry of this Decree, the individual: (i) was asked or required by Defendants or their partner practices to use third-party medical support personnel for transfer or transport to Defendants' and their partner practices' facility for surgery, or (ii) used third-party medical support personnel to assist with transfer to and from surgical tables and/or transport to and from Defendants' and their partner practices' surgical centers and would not have otherwise used third-party medical support personnel but for Defendants' or their partner practices' request; or (iii) was denied medical services because the individual required transfer assistance at a surgical center in order to receive medical services.  Claimants whose use of third-party medical support personnel cannot be substantiated by Defendants' and their partner practices' records can provide supporting documentation, if they have any.

Importantly, many individuals who were denied medical services, or who are filing claims on behalf of estates where decedents were denied medical services, may not have supporting documentation.  The Administrator will not require supporting documentation for such claims.

   ii.  Defendants and their partner practices shall provide the Administrator all records of patients arriving for surgery via third-party medical transport and transfer personnel between January 1, 2017 and the entry of this Decree.

  iii.  Defendants and their partner practices shall provide the Administrator all records of patients denied surgery because such patients have disabilities requiring transfer assistance and the patients declined the requirement to be transferred or Defendants and their partner practices refused to provide transfer assistance between January 1, 2017 and the entry of this Decree.

  iv.  The Administrator must consider any information provided by the United States or Defendants in determining Eligible Persons.

   v.  The United States shall, in its sole discretion, determine what portion of the Fund to pay each Eligible Person who was denied medical services and what portion of the Fund to pay each Eligible Person who was required to seek third party transfer and transport assistance to a BDP or AVP affiliated facility.  Any remainder in the Fund after each Eligible Person receives  an award in compensation will be distributed to Eligible Persons in the manner described in Paragraph 28.

  vi.  No procedures beyond those approved by the United States will be imposed on any claimant or Eligible Person.

28.   <u>Residual Amount in Claims Fund</u>.  Every 30 days after the mailing of the last payment to Eligible Persons, the Administrator will notify the United States and Defendants in writing of the (non-cashed) remaining balance of the Fund (Residual Amount), if any.  After the Administrator exhausts reasonable efforts as required in this Decree to contact Eligible Persons, any payments made to Eligible Persons that are returned or not cashed or deposited within 180

days of issuance of the last check, will be added to the Residual Amount, as will any remaining interest accrued by the Fund.  The United States, in its sole discretion, will determine what portion of the Residual Amount the Administrator will  distribute to each Eligible Person who has cashed or deposited compensation payments.

29.   <u>Notice</u>.  Defendants will publish a Notice of Americans with Disabilities Act Settlement (Notice), as follows:

a.  Within fourteen (14) days of the Administrator's retention, and every thirty (30) days thereafter until one year has passed from the entry of this Decree, Defendants will publish and distribute the Notice via U.S. mail and email to all patients whose records were produced to the United States during the course of this lawsuit, as well as all non-weightbearing patients or prospective patients[2] who have a disability limiting mobility who, since January 1, 2017, were refused medical services or required to use third-party medical support personnel to not only assist with transferring them to and from surgical tables but also to transport them to and from BDP surgical centers on gurneys or stretchers.  If any such Notices are returned to the Administrator because the patient no longer lives at the address in Defendants' files, or if any such notices are not deliverable to the email address to which they were directed, then the Administrator will, within thirty (30) days of the return of such mail or email, contact the person by telephone, updated mail and email addresses, if known, at least four (4) times via telephone, mail and email, to inform the person of the existence of the Fund, direct the person to where information about the Fund can be found, and request the person's updated contact information.  Within seven (7) days of the receipt of updated contact information, the Administrator will re-send the Notice in whatever format the updated contact information takes (e.g., email, first class U.S. mail, social media platforms, etc.).

---

[2] Prospective patients include individuals who inquired, contacted, were contacted, or otherwise expressed an interest in Defendants' or their partner practices' medical services but never received such medical services.

b. Within fourteen (14) days of the Administrator's retention, publish and maintain the Notice on BDP and AVP's website homepages at: https://www.goodeyes.com/ and https://americanvisionpartners.com, in an accessible and conspicuous location visible by all patients and prospective patients.

c. Such posting (and all other computer-based requirements for posting under this Decree) will comply with the Web Content Accessibility Guidelines 2.0 level AA, published by the World Wide Web Consortium ("W3C"), Web Accessibility Initiative ("WAI"), available at www.w3.org/TR/WCAG.

d. Within 60 days of the Administrator's retention, the Administrator will make a one-time distribution of the Notice to each individual who, between January 1, 2017 and the date of this Decree: (1) was required or asked by Defendants to use a third-party medical support transport or support provider for transfer or transport to one of Defendants' facilities for surgery; (2) raised concerns to Defendants about Defendants' policy or preference or referral to third-party medical support transport or transfer providers; or (3) lodged a disability-related complaint with Defendants relating to the individual's need for transfer assistance. The Administrator will send the Notice by whatever means the individual used to contact Defendants (e.g., email, telephone, Facebook messages, U.S. mail). If any such Notices are returned to the Administrator because the individual's prior means of contacting Defendants are no longer valid, in each such case the Administrator will, within thirty (30) days of the return of such attempted outreach, contact the individual by telephone four (4) times (or, if the Administrator does not have the individual's telephone number, by any other means that the Administrator has to try to reach such individual to inform them of the existence of the Fund), direct them to where they can find information about the Fund, and request their updated mailing and email contact information. Within ten (10) days of the receipt of updated mailing or email contact information, the Administrator will re-send the Notice by first class U.S. mail to the address and in

14

electronic format if the Administrator has an email address for that individual using the updated information.

30.     At least once per month for at least six (6) months, starting fourteen (14) days after the retention of the Administrator, Defendants will post, pin, and maintain a tweet on their Twitter accounts, including @GoodEyesAZ, with the following text, the International Symbol of Accessibility, and a unique link (provided by the Administrator) to the Fund website: "Barnet Dulaney Perkins Eye Center (BDP) and Medical Management Resources Group, LLC d/b/a American Vision Partners (AVP) have resolved an Americans with Disabilities Act lawsuit by the United States alleging that BDP and AVP discriminated against patients with disabilities limiting mobility, on the basis of disability, who needed transfer assistance to and from surgical tables.  The United States also alleged that BDP and AVP denied surgery to patients with disabilities limiting mobility who needed transfer assistance to and from surgical tables or required those patients with disabilities to pay for medical transport to assist with such transfer.  To learn more about this agreement, including Defendants' Claims Fund, visit: [unique link to Administrator's Fund website] (the "Notice")".

31.     At least once per month for at least six (6 months), starting fourteen (14) days after the retention of the Administrator, Defendants will post the Notice and maintain a post of the Notice on their Instagram and Facebook pages.

32.     <u>Claims Period</u>.  Potential Eligible Persons will have six (6) months from the distribution of the Notice described in Paragraph 29 ("Claims Period") within which to contact the Administrator to assert any claims concerning this Decree.  The Administrator and the United States may help Eligible Persons to make claims.

33.     <u>Claims Review</u>.  On a weekly basis after the distribution of the Notice described in Paragraph 29 and until at least thirty (30) days after the close of the Claims Period, the Administrator will send the United States the names and all contact information for each Eligible Person and a brief summary of the incident(s) leading to the determination that the person is eligible for payment from the Fund.  The Administrator will also send the United States on a  weekly basis and at least until thirty (30) days after the close of the Claims Period

the name and all contact information for each person who timely contacted the Administrator but was not deemed an Eligible Person and the reasons why such person was not deemed to be an Eligible Person, including a brief summary of the incident.  If there is any disagreement between the United States and the Administrator on the determination of an Eligible Person, the United States, in its sole discretion, will make the final determination on both the eligibility and, if determined to be an Eligible Person, the amount of monetary relief the Eligible Person will receive from the Fund.

34.    Access.  The parties will work together in good faith to provide the United States and the Administrator access to patient medical records or communication information that it has or controls, which the United States or the Administrator need to provide notice to potential Eligible Persons or to administer the monetary claims process.

35.    Notification of Payment.  The Administrator will notify Defendants and the United States in writing on the days when payments of monetary relief to Eligible Persons have been made.

## VIII.    MONETARY RELIEF FOR AGGRIEVED INDIVIDUALS

36.    Defendants will pay compensatory damages to aggrieved persons identified by the United States, totaling $225,000, as authorized by 42 U.S.C. 12188(b)(2)(B) and (incorporating by reference 28 C.F.R. § 36.504(a)(2)).  The United States shall, in its sole discretion, determine what amount each aggrieved person will receive; such individuals shall not also receive compensation from the Fund.  The United States will identify to the Administrator each aggrieved person and the amount that person will receive.  Within 14 days of the entry of this Decree, Defendants shall deposit the sum of $225,000 in an interest-bearing account, separate from the account established for the Fund.  The Administrator will have access to the account to compensate aggrieved individuals.  The Administrator shall provide the aggrieved individuals identified by the United States with a Release of Claims form (attached as Appendix A), a copy of this Consent Decree, and a pre-paid means to return the signed Release of Claims form.  In order to receive compensation, each identified aggrieved person must sign and return the

Release of Claims form to the Administrator.  The Administrator will send checks to each

aggrieved person within seven days of receiving the signed Release of Claims form.

## IX.     CIVIL PENALTY

37.     Within 30 days of entry of this Decree, the Defendants shall pay $50,000 to the

United States as a civil penalty, under 42 U.S.C. § 12188(b)(2)(C)(i); 28 C.F.R. § 85.5

(adjustments for civil penalties); and 28 C.F.R. § 36.504(a)(3)(i).  The payment shall be in the

form of an electronic funds transfer pursuant to written instructions by the United States.

## X.     IMPLEMENTATION AND ENFORCEMENT

38.     Failure by the United States to enforce any provision of this Decree shall not be

construed as a waiver of the United States' right to enforce any provision of this Decree.

39.     If any term of this Decree is determined by any court to be unenforceable, the

other terms of this Decree shall remain in full force and effect.

40.     If the United States objects to any changes or actions proposed by Defendants

under this Decree, or if the United States believes that Defendants have violated any portion of

this Decree, the United States will give notice (including reasonable particulars) of the

objections or violations to Defendants.  Defendants must respond to this notice as soon as

practicable but no later than fifteen (15) days thereafter.  The Parties will negotiate in good faith

in an attempt to resolve any dispute.  If the United States and Defendants are unable to reach a

mutually acceptable resolution within thirty (30) days of Defendants' response, the United

States may seek court enforcement of this Decree.

41.     As to any deadline specified in this Decree other than the duration, if Defendants

cannot meet the deadline specified, then Defendants shall notify the United States at least one

month before the deadline of their inability to meet the deadline and the reasons why, and shall

request an extension of time to a specific date.  The United States shall be reasonable in agreeing

to an extension.

42.     All documents and communications required to be sent to the United States shall

be sent by overnight courier or, where practicable, by email to charlotte.lanvers@usdoj.gov as

follows:

Charlotte Lanvers
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., NW – 4CON
Washington, DC 20530
(202) 305-5703
charlotte.lanvers@usdoj.gov
[DJ # 202-8-348]

43.    This Decree is binding upon Defendants, and each of their officers, agents, employees, successors and assigns.

44.    A signatory to this document in a representative capacity for Defendants is authorized to bind Defendants to this Decree.

45.    This Decree constitutes the entire agreement between the United States and Defendants on this matter.  No other statement, promise, or agreement, either written or oral, made by any party or agents of any party, that is not contained in this written Decree, including its attachments, is enforceable.

46.    This Decree is not intended to remedy any other potential violations of the ADA or any other law that are not specifically addressed in this Decree.

47.    This Decree is not intended to, and shall not, impose any obligations not otherwise imposed by applicable law on practices and facilities that were acquired by or became supported by AVP on or after December 20, 2021.

48.    This Decree does not affect Defendants' continuing responsibility to comply with all aspects of the ADA.

49.    The Parties agree that as of the date of entry of this Decree, litigation is not "reasonably foreseeable" concerning the matters described in the amended complaint.  To the extent that either party previously implemented a litigation hold to preserve documents, electronically stored information, or things, the party is no longer required to maintain such a litigation hold.  Nothing in this paragraph relieves either party of any other obligations imposed by this Decree.

50.     The terms of this Decree shall not apply to any partner practice (as defined in Footnote 1) if that partner practice no longer maintains a management services agreement with AVP.

51.     The Effective Date of this Decree is the date the Court enters the Decree.  All durations specified in this Decree run from the Effective Date, unless otherwise specified.  The duration of this Decree will be two years from the Effective Date.  The Court shall retain continuing and exclusive jurisdiction for the duration of the Decree to enforce the terms of the Decree.

Dated this 19th day of January, 2023.


_____

Susan R. Bolton
United States District Judge

AGREED AND CONSENTED To:

FOR THE UNITED STATES OF AMERICA:


KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division


REBECCA B. BOND
Chief
KEVIN J. KIJEWSKI
Deputy Chief


s/Charlotte Lanvers
CHARLOTTE LANVERS
Trial Attorney
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., NW – 4CON
Washington, DC 20530
(202) 305-5703

GARY M. RESTAINO
United States Attorney
District of Arizona

s/ Bill C. Solomon
BILL C. SOLOMON
Assistant United States Attorney

Date: January 17, 2023


FOR BARNET BULANEY PERKINS EYE CENTER, P.C


s/Shane Armstrong
Shane T. Armstrong, Chief Executive Officer

FOR MEDICAL MANAGEMENT RESOURCES GROUP, L.L.C., d/b/a AMERICAN VISION PARTNERS HOLDINGS, L.L.C.

s/Shane Armstrong
Shane T. Armstrong, Chief Executive Officer

**APPENDIX A**

**RELEASE OF CLAIMS**

For and in consideration of the relief offered to me by Defendants Barnet Dulaney Perkins Eye Center, P.C. (BDP) and Medical Management Resources Group, L.L.C. d/b/a American Vision Partners (AVP) pursuant to the Consent Decree between the United States of America and BDP and AVP:

I, _____, hereby release and forever discharge BDP and AVP (including all of its partner practices) and their current, past, and future officers, employees, administrators, agents, successors, and assigns, of and from any Americans with Disabilities Act related claims arising out of the facts identified in the amended complaint filed in the United States District Court for the District of Arizona, *United States of America* v. *Barnet Dulaney Perkins Eye Center, PC, et al*, No. 21-cv-2172 (D. Ariz.) or the allegations made in the Decree.

This Release constitutes the entire agreement between BDP and AVP and me, without exception or exclusion.

I acknowledge that a copy of the Decree has been made available to me.  By signing this Release, I acknowledge that I have been provided the opportunity to review the Decree with an attorney of my choosing.

I have read this Release and understand the contents thereof and I execute this Release of my own free act and deed.

Date:                                        _____

Aggrieved Person's Mailing Address        _____

Aggrieved Person's Signature              _____